UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DANIELL,                              Case No. 15-12798

             Plaintiff,            Arthur J. Tarnow
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge
             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 14)**

## I.      PROCEDURAL HISTORY

    A.      Proceedings in this Court

On August 7, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability, disability insurance benefits and supplemental security income. (Dkt. 2). This matter was reassigned to the undersigned pursuant to Administrative Order on January 5, 2016. (*See* Text-only Order of Reassignment). Both parties filed motions for summary judgment in this case. (Dkt. 13, 14). This

matter is now ready for report and recommendation.

    B.    <u>Administrative Proceedings</u>

    Plaintiff filed the instant claims for a period of disability, disability insurance benefits and supplemental security income on November 15, 2013, alleging disability beginning October 19, 2013, which was later amended to November 8, 2013.  (Dkt. 9-2, Pg ID 72; Dkt. 9-5, Pg ID 186).  Plaintiff's claims were initially denied by the Commissioner on June 2, 2014.  (Dkt. 9-2, Pg ID 72).  Plaintiff requested a hearing and on December 1, 2014, plaintiff testified before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the case *de novo*.  (Dkt. 9-2, Pg ID 85-116).  In a decision dated January 22, 2015, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 69-80).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 11, 2015, after reviewing additional exhibits,[1] denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 47-53); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner of Social Security be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1956 and was 56 years old on the amended alleged onset date.  (Dkt. 9-2, Pg ID 78).  Plaintiff had past relevant work as an auto body repairer.  *Id*.  Plaintiff stopped working in October 2013 when he was diagnosed with non-Hodgkins lymphoma and began undergoing treatment.  (Dkt. 9-2, Pg ID 89).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged on-set date of November 8, 2013.  (Dkt. 9-2, Pg ID 74).  At step two, the ALJ found that plaintiff had the following severe impairments: history of large B-Cell lymphoma with chemotherapy and gastroesophageal reflux disease  *Id*. at Pg ID 75.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*.

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform medium work as follows:

3

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform medium work as defined in 20 CFR 404.1567(c)
> and 416.967(c) except can only occasionally climb
> ladders, cannot climb any ropes or scaffolding, and can
> only frequently climb ramps or stairs.

(Dkt. 9-2, Pg ID 75).  At Step Four, the ALJ found that plaintiff could perform his past relevant work and was, therefore, not disabled.  (Dkt. 9-2, Pg ID 78-79).  The ALJ also made an alternative Step Five finding that plaintiff could perform the jobs of janitor, kitchen helper, and packager.  *Id*.

B.   <u>Plaintiff's Claims of Error</u>

Plaintiff first argues that the ALJ's credibility determination was inadequate.  Plaintiff has alleged that he is disabled due to chronic cancer related fatigue, and pain and numbness in his hands and feet which prevents prolonged standing, and the ALJ found these allegations to be incredible given that plaintiff's treatment for Lymphoma was successful in causing remission and he is no longer in medical treatment.  According to plaintiff, this is not valid reasoning where the alleged symptoms and limitations are  consistent with his medical disease process and the residual effects of treatment.  Plaintiff maintains that cancer-related fatigue is a well-documented phenomenon that can persist long beyond remission and indefinitely.  Plaintiff also points out that additional factors that can contribute to cancer-related fatigue and which are present in this case include anemia and

4

chemotherapy, including specifically Vincristine, which was part of his treatment protocol. The ALJ erroneously assumed that cancer-related fatigue and fatigue as a side effect of treatment would be expected to resolve concurrently with successful treatment, when in fact the medical literature establishes that these conditions may persist long beyond completion of the therapy.

According to plaintiff, his diagnosed medical impairment of non-Hodgkins lymphoma, concurrent anemia, and chemotherapy treatment with Vincristing could reasonably be expected to produce the functionally limiting fatigue alleged by plaintiff. Similarly, the ALJ discredited plaintiff's allegations of pain and numbness in hands and feet which limit his ability to perform prolonged standing. However, chemotherapy, including specifically Vincristine is known to cause nerve damage which can trigger symptoms of pain, numbness and tingling in hands and feet, and trouble walking, and can also cause constipation, which the plaintiff also suffered from. Plaintiff says that this condition is referred to as Chemotherapy-Induced Peripheral Neuropathy or CIPN. In this case, plaintiff had been diagnosed with an aggressive, Stage 4 non-Hodgkins lymphoma and was treated with multiple drugs in a two part chemotherapy regimen administered in 4 cycles, along with anemia. These factors are known to cause chronic fatigue and constitutional weakness, numbness and tingling in hands and feet, all of which have been documented in plaintiff's medical records. (Dkt. 9-7, Pg ID 383-384;

5

Appeals Council submission of medical records of Beaumont Family, Dkt. 9-7, Pg ID 441, 442, and reports to SSA Dkt. 9-6, Pg ID 270; Dkt. 9-2, Pg ID 97, 101, 105).

Plaintiff also finds fault with the ALJ's conclusion that his alleged impairments were inconsistent with his daily activities, and the fact that his girlfriend, who previously cared for him, had moved out at the end of his chemotherapy treatment. This conclusion contradicts plaintiff's testimony that he must pace his activities with frequent rest periods, and in fact rests for most of the day. He actually moved a bed into his living room so that he could comfortably rest during the day without having to go up and down the stairs. (Dkt. 9-2, Pg ID 105). Plaintiff says he has periods where he is in bed resting for days at a time. The evidence is that his girlfriend moved out because she needed to care for her mother, not because he was fully recovered. (Dkt. 9-2, Pg ID 88). According to plaintiff, the ALJ's explanation for his credibility determination is without substantial support because the ALJ erroneously discredited plaintiff's testimony and failed to include these impairments in his RFC determination.

Plaintiff also argues that the ALJ's Step 4 determination is based on vocational expert testimony given in response to a hypothetical question that does not reflect all of plaintiff's impairments. Had the hypothetical question in this claim accurately described all limitations, including those of inability to perform

6

prolonged standing/walking, and need to rest/ recline during the day, the plaintiff would have been entitled to a finding of "disabled" under the Appendix 2 Medical-Vocational Guidelines, Rule 202.06 (limitation to light work), or 201.06 (limitation to sedentary work).

C.     The Commissioner's Motion for Summary Judgment

In response, the Commissioner maintains that substantial evidence supports the ALJ's credibility determination.  The Commissioner acknowledges that plaintiff was unable to work during the approximately 40 total days he spent in the hospital between November 2013 and April 2014.  (Dkt. 9-2, Pg ID 91-92; Dkt. 9-7, Pg ID 399).  The Commissioner also acknowledges that it is possible that he was unable to work on some of the other days during that period.  Yet, as the Commissioner points out, a short-term inability to work is not what the Social Security disability program is designed to address, as set forth in SSR 82-52, which explains that to be found disabled, a person must be unable to engage in substantial gainful activity for a period lasting at least 12 months due to a medically determinable physical or mental impairment.  According to the Commissioner, the ALJ properly considered this duration requirement in evaluating whether plaintiff was disabled. (Dkt. 9-2, Pg ID 74) ("If the claimant is not able to do other work and meets the duration requirement, he is disabled."); (Dkt. 9-2, Pg ID 76) (recognizing that medical testing and plaintiff's reports

7

indicated no medical problem by June – September 2014); (Dkt. 9-2, Pg ID 77)

("His more significant limitations in terms of daily life relating to the cancer and

effects of treatment did not last for twelve months or more."); (Dkt. 9-2, Pg ID

77) (recognizing that the decision is "generally consistent" with the opinion of

state agency reviewing physician Dr. Daniels, who recommended denying benefits

on the basis that the regulatory duration requirement was not met (Dkt. 9-3, Pg ID

123-124)).

       As plaintiff recognizes, the ALJ noted that his lymphoma was in full

remission and that he had had no treatment for it since May or June 2014.  (Dkt. 9-

2, Pg ID 76).  The Commissioner also points out that the ALJ further discounted

plaintiff's credibility in part because: (1) in April 2014, when plaintiff was nearly

done with chemotherapy, he denied "nausea, vomiting, weakness, fever, chest

pain, [or] shortness of breath…. His only complaint was constipation that

responded well to milk of magnesia." (*Id*., supported at Dkt. 9-7, Pg ID 399); (2)

"[i]n June 2014 the claimant reported feeling well with no new complaints and in

September 2014 CBC [complete blood count] was normal" (*id*., supported at Dkt.

9-7, Pg ID 481, 483); (3) plaintiff's daily activities were inconsistent with his

complaints (Dkt. 9-2, Pg ID 76-77); (4) the state agency reviewing physician Dr.

Daniels indicated that plaintiff was not disabled (Dkt. 9-2, Pg ID 77, supported at

Dkt. 9-3, Pg ID 123-124); and (5) plaintiff was no longer taking any medication.

(Dkt. 9-2, Pg ID 78).

The Commissioner maintains that Sixth Circuit precedent supports the ALJ's finding that plaintiff's non-use of medication and lack of treatment during much of the alleged disability period undercut his credibility. *See e.g.*, *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *Lewis v. Gardner*, 396 F.2d 436, 437 (6th Cir. 1968) (per curiam) (upholding ALJ's discounting of claimant's allegations in part because "there is no evidence that medication was prescribed for or taken by appellant to relieve his back pain. Appellant had not been hospitalized for his back ailment during the period from the latter part of 1953 to March, 1961, and had seen the nurse at Goodwill Industries on only three occasions for his back problem from 1957 through February, 1961."). Thus, the Commissioner maintains that it is clear that the ALJ did not discount plaintiff's allegations "solely because they [were] not substantiated by objective medical evidence." (Pl's Brief at 31 (quoting SSR 96-7p, 1996 WL 374186, at *1)). To the contrary, the Commissioner says that the ALJ relied on significant affirmative evidence, including plaintiff's statements and activities and Dr. Daniels' opinion.

The Commissioner also says that plaintiff appears to argue that the ALJ was required to accept his allegations of pain, and in support he cites to Sixth Circuit precedents from 1986 and 1988. (Pl's Brief at 25, citing *Preston v. Sec'y of*

9

*Health & Human Servs*., 854 F. 2d 815 (6th Cir. 1988); *Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 853 (6th Cir. 1986)).  According to the Commissioner, those precedents cannot reasonably be read as standing for such a proposition, and further, those precedents should no longer be seen as valid to whatever extent they direct an analytical process that is inconsistent with the two step process set forth in SSR 96-7p, which was promulgated in 1996.  The second step "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  *Id*. at *1.

Here, the ALJ found that plaintiff had satisfied the first step of this inquiry, but then at the second step found plaintiff's allegations not entirely credible (Dkt. 9-2, Pg ID 76), for the reasons explained above.  The Commissioner contends that since the ALJ could not have made a more favorable finding at the first step, plaintiff's arguments regarding that step are irrelevant.  That is, according to the Commissioner, it is unavailing to plaintiff to make general statements that certain conditions are known to sometimes produce certain symptoms because "[a] mere diagnosis …, of course, says nothing about the severity of the condition."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).  As the Sixth Circuit recognized in *Higgs*, "it is [the claimant's] burden to prove the severity of her impairments."  *Id*.; accord *Her v. Comm'r of Social Security*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The Commissioner urges the Court to reject plaintiff's argument that "[t]he ALJ erroneously assumed that cancer-related fatigue and fatigue as a side-effect of treatment would be expected to resolve concurrently with successful treatment." (Pl's Brief at 22).  Rather, according to the Commissioner, the ALJ assumed no such thing: instead, he marshaled significant evidence to support his conclusion that plaintiff's condition had improved.  Along the same lines, plaintiff states that chemotherapy "is known to cause nerve damage," and cites to medical literature on the subject of chemotherapy-induced peripheral neuropathy, (*id*. at 23 and n.2; Dkt. 13-2), and yet he testified at the administrative hearing that no doctor had ever told him that he had neuropathy.  (Dkt. 9-2, Pg ID 97).

Additionally, the Commissioner says that plaintiff only points to a single instance in the medical records -- an April 15, 2014 examination -- where he reported slight numbness and tingling in his fingers (Pl's Brief at 18 (citing Dkt. 9-7, Pg ID 442)), and further, a neurological examination conducted four days later was normal.  (Dkt. 9-7, Pg ID 413).  It was also reasonable, according to the Commissioner, for the ALJ to take note of plaintiff's statement in June 2014, after the chemotherapy was finished, that he was "feeling well with no new complaints."  (Dkt. 9-2, Pg ID 76, supported at Dkt. 9-7, Pg ID 481).

The Commissioner next asserts that the Court must disregard plaintiff's citation to Dkt. 9-2, Pg ID 55-58, an April 2015 examination note that post-dates

11

the ALJ's January 2015 decision: plaintiff does not argue that this evidence meets the stringent requirements of the sixth sentence of 42 U.S.C. § 405(g) for a remand for consideration of new evidence, and there is no other basis for the Court to consider that evidence. *See Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993) (per curiam). Second, to the extent plaintiff cites to medical evidence dating from December 2013 and April 2014. (Dkt. 9-7, Pg ID 383-384, 441-442), the Commissioner says she has already explained that substantial evidence supports the ALJ's finding that plaintiff recovered well from his treatments well under a year after cancer was first diagnosed in October or November 2013. Third, to the extent plaintiff advances his own testimony, "an ALJ is not required to accept a claimant's subjective complaints." *Jones v. Comm'r of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003). In particular, plaintiff criticizes the ALJ for noting that "his girlfriend, who previously cared for him, had moved out at the end of his chemotherapy treatment" (Pl's Brief at 26): plaintiff stresses that she "moved out because she needed to care for her mother." *Id*. at 27. But in fact, the ALJ explicitly recognized that the girlfriend "moved out to care for her ailing mother." (Dkt. 9-2, Pg ID 77). Further, in light of the other significant evidence that the ALJ relied on, it was reasonable for the ALJ to conclude that plaintiff needed less assistance beginning in May 2014 when his girlfriend moved out (id.). Plaintiff demonstrates no error. In summary, the

12

Commissioner contends that plaintiff fails to demonstrate any impropriety in the ALJ's credibility determination, let alone some "compelling reason" to overturn that determination under the Sixth Circuit's highly deferential standard. *See Smith*, 307 F.3d at 379.

According to the Commissioner, the ALJ based that finding on vocational expert testimony offered in response to an ALJ hypothetical that included all of the limitations found in the ALJ's eventual RFC determination, plus a limitation to "no more than occasional overhead reaching and handling bilaterally." (Dkt. 9-2, Pg ID 110-111, 112-113). The Commissioner contends that the Court should reject plaintiff's argument that the ALJ's hypothetical questions should have included the additional limitations of an "inability to perform prolonged standing/walking, and the need to rest/recline during the day." (Pl's Brief at 27-28). As an initial matter, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235. Plaintiff, who bears the burden to demonstrate RFC limitations, *e.g.*, *Her*, 203 F.3d at 391-92, fails to show how "a reasonable mind" would be compelled to include a need for such additional limitations, *see Richardson*, 402 U.S. at 401 (defining the substantial evidence standard). Notably, plaintiff does not argue that there is any meaningful difference between the ALJ's RFC determination and the

only medical opinion of record, that of state agency reviewing physician Dr.

Daniels, which the ALJ recognized was "generally consistent" with the ALJ's

decision.  (Dkt. 9-2, Pg ID 77).  Dr. Daniels recommended a "durational denial"

(Dkt. 9-3, Pg ID 123), explaining: "The MDI(s) [medically determinable

impairment(s)] is not, or will not be, or was not, of such severity so as to prevent,

or to have prevented, the individual from engaging in SGA [substantial gainful

activity] within twelve months after onset."  (Dkt. 9-3, Pg ID 124).  In light of Dr.

Daniels's opinion and the other substantial evidence that supports the ALJ's

analysis, the Commissioner maintains that analysis should stand.

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

14

1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

15

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

16

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

Plaintiff first argues that the ALJ did not find his claims of disabling fatigue and pain fully credible and that this was error. In the view of the undersigned, the ALJ's credibility analysis is fully supported by substantial evidence. Plaintiff's complaints of disabling fatigue and pain are not, however, substantiated in the record. While plaintiff made some complaints regarding fatigue, there is no suggestion in the record that this fatigue was so severe as to be disabling, even while plaintiff was undergoing his chemotherapy treatment. (Dkt. 9-7, Pg ID 323 (complains of fatigue), 325 (complains of fatigue), 359 (complains of severe fatigue), 361 (complains of severe fatigue), 441 (complains of some fatigue), 442 (no fatigue, but slight numbness and tingling in fingers), 444 (no fatigue), 447 (complains of fatigue lately), 450 (some fatigue)). Moreover, the medical

20

evidence shows that plaintiff no longer complained about fatigue or pain after he completed his chemotherapy. For example, at his June 2014 and September 2014 appointments with his oncologist, no fatigue or pain was reported. (Dkt. 9-7, Pg ID 464-465; 466-467).[2]

In the view of the undersigned, much of plaintiff's argument, at its core, suggests that because plaintiff may suffer from post-cancer fatigue and pain, his conditions are therefore disabling. However, this Circuit has made clear that the mere fact that a plaintiff suffers from certain conditions or carries certain diagnoses does not necessarily equate to disability or a particular RFC. Rather, a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). The residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe

---

[2] Plaintiff submitted treatment records for fatigue from 2015 to the Appeals Council. However, that will not be considered here. *See* note 1. Notably, as pointed out by the Commissioner, plaintiff has not moved for remand under Sentence Six.

impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Here, while plaintiff may unfortunately suffer from fatigue and pain, the medical evidence simply does not support the conclusion that these conditions or symptoms are disabling.

Further, to the extent that the ALJ found that plaintiff's statements were not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that the agency "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994)

(applying these factors).

Here, the ALJ considered and discussed plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and he found that plaintiff's allegations were not entirely credible. (Dkt. 9-2, Pg ID 76-77). In reaching this determination, the ALJ reasoned that the objective medical evidence did not support plaintiff's allegations. *Id.* Yet, his analysis did not end there. The ALJ also pointed out that plaintiff's daily activities were not as limited as one would expect, given his complaints of disabling symptoms and limitations. *Id.* Plaintiff lives in a two story house with his 14 year old son, whom he cares for. Plaintiff drives, cooks, does housework, tends to his own personal grooming, socializes with friends and attends church weekly. *Id.* The ALJ also acknowledged that plaintiff's girlfriend lived with him while he was undergoing chemotherapy and it made sense that he needed additional help at that time. Contrary to plaintiff's assertions, the ALJ acknowledged that she moved out to help her own mother, not specifically because plaintiff no longer needed assistance. *Id.* His girlfriend reported in May 2014 that plaintiff was doing some light yard work and driving his son to extracurricular activities. *Id.* In evaluating plaintiff's credibility, the ALJ also turned to the opinion of the state agency medical consultant, Dr. Daniels, who concluded that plaintiff was not disabled and his limitations were not expected to last longer than 12 months. *Id.* As discussed

above, the ALJ provided specific reasons for discounting plaintiff's credibility in his decision, many of which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3). Thus, in the view of the undersigned, the ALJ's assessment of plaintiff's credibility is supported by substantial evidence and should not be disturbed.

Finally, given that the undersigned finds no error in the formulation of plaintiff's RFC and the assessment of plaintiff's credibility, there is no attendant error in the hypothetical question posed to the vocational expert. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). The rule that a hypothetical question must accurately portray all of claimant's physical and mental limitations does not divest the ALJ of her obligation to assess credibility and determine the facts. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005)). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Id*. (citing *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). An ALJ is not required to accept a claimant's

24

subjective complaints, and can present a hypothetical to the VE on the basis of his own reasonable assessment of the testimony and other evidence.  *Id*. (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)).  In the view of the undersigned, the RFC assessment and the related hypothetical questions posed to the VE accurately portray plaintiff's physical and mental impairments and thus provide substantial evidence to support the ALJ's non-disability finding.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED** .

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 19, 2016                     s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>August 19, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov

26